8186

THE LOWRY NATIONAL BANK v. SEYMOUR.

1. NOTES.—THE PRESUMPTION is that the holder of a negotiable note with the name of the payee indorsed thereon is an indorsee for value without notice.

2. IBID.—EVIDENCE.—Where the maker of a note goes to the collecting bank to inspect it to ascertain if it has been duly indorsed and on the trial testifies that he is not sure, but his impression is that no indorsement by the payee was on it when he saw it, after maturity, his evidence is mere conjecture and should not affect the positive evidence of the officers of the indorsee bank speaking from its books that the note was discounted on the next day after it was made. so as to raise an inference to the contrary.

MESSRS. CHIEF JUSTICE GARY *and* JUSTICE FRASER *dissent.*

3. BANKS—JUDICIAL NOTICE.—If the Courts must take judicial notice of banking hours, they must also take judicial notice that banks sometimes accommodate their customers after those hours.

Before WATTS, J., Greenwood, April term, 1911. Affirmed.

Action by The Lowry National Bank of Atlanta against E. Z. Seymour. Defendant appeals.

*Messrs. Grier, Park & Nicholson,* for appellant.

*Messrs. Giles & Ouzts,* contra, cite: *Presumption of transfer for value without notice arises upon proof of possession and indorsement:* 28 S. C. 538.

April 18, 1912. The opinion of the Court was delivered by

MR. JUSTICE WOODS. Reversal of the judgment in this case would be a precedent seriously impairing without reason the value of negotiable instruments to the great injury of borrowers, as well as lenders, of money.

20—91

The defendant, E. Z. Seymour, made his promissory note at Greenwood, South Carolina, on March 11, 1910, for seven hundred and seventy dollars, payable to the order of Southern Flour and Grain Company on October 15, 1910. The plaintiff, The Lowry National Bank, of Atlanta, Georgia, as an indorsee for value before maturity, brought this action against the maker. The defendant alleged in his answer that the note was given for the purchase money of flour; that the agent of Southern Flour and Grain Company had guaranteed him against a decline in the price of flour, and had also expressly warranted the quality; that the price did decline, and the flour turned out to be below the grade guaranteed; and that the plaintiff was not a purchaser for value before maturity.

After hearing the entire evidence, the Circuit Judge directed a verdict in favor of the plaintiff for the full amount of the note on the ground that the evidence showed beyond doubt that the bank was a purchaser for value before maturity.

The plaintiff offered in evidence the note in its possession, with the name of the payee indorsed thereon. The vice president of the bank, the cashier, the receiving teller, and the discount clerk, each testified that the bank discounted the note, for value, with the indorsement of the payee, on March 12, 1910, and that the note had ever since remained the property of the bank. In addition to this, the discount clerk testified to the correctness of entries made by him on the books of the bank on March 13, 1910, showing the discount of the note on the 12th, and the receiving teller testified to the correctness of a deposit ticket dated March 12, 1910, indicating that the note in suit had been discounted, and the net amount placed to the credit of Southern Flour and Grain Company on that day.

The Court had before it, not only this evidence of the officers of the bank, but also the presumption that the holder

of a promissory note with the name of the payee indorsed thereon is an indorsee for value, before maturity, without notice. *First National Bank v. Anderson,* 28 S. C. 143, 53 S. E. 343; *Park* v. *Funderburk,* 87 S. C. 76, 68 S. E. 963.

Against this evidence there is not a single positive statement of the witnesses for the defense—nothing that amounts to more than conjecture. The defendant. Seymour, testified on his direct examination that he went to the Bank of Greenwood, which held the note for collection, for the express purpose of examining it and ascertaining whether it had been negotiated by the payees. When asked by his counsel if the indorsement of the payees was on it he could testify only in this language: "To my best recollection it belonged to the parties I bought the flour from. I don't think it had it on it at all, to the best of my recollection. No, sir; I didn't see that—have no recollection of seeing it at all. Yes, sir; I am pretty clear on that—have no recollection of seeing that at all. Pretty positive. Of course, I couldn't be sure, but I don't think it was there." On the cross-examination the witness repeated in substance what he had said to his own counsel, but, with commendable frankness, testified that the indorsement might have been on the note when he examined it, and that he had no independent recollection whether it was or not. This evidence means that after the maker had looked at it to see whether it had been indorsed, he could only testify at the trial that he had some sort of impression that it had not, but no recollection whether it had or not, and that he could not deny that the indorsement was there. Caution in giving testimony, it is true, often indicates that weight should be given to the testimony, but where a witness, deeply interested, institutes an inquiry as to the one particular matter vital to his own interest, that is, whether a name has been indorsed on a paper, and examines the paper to find out, his testimony that to the best of his *recol-*

*lection* the indorsement is not there, ·but that he has *no independent recollection* on the subject is not evidence, 'but mere conjecture. No importance is to· be attached to the fact that defendant's counsel after hearing his statement advised him not to pay; that advise is by no means unusual, for where the maker of a note has a good defense against the payee he often wishes to have a trial on the question whether the indorsement was made *bona fide,* for value, before maturity.

The defendant further submits that there was evidence that the note, though written and dated March 11. 1910, was not signed at Greenwood till the morning of the 12th, and could not have reached Atlanta until four or five o'clock on the afternoon of March 12th, after banking hours. His own testimony was not positive whether the note was signed on the 11th or 12th, but his brother, M. T. Seymour, who signed the note for him, testified positively that the note was not signed until the morning of the 12th, and that he thought the first train that day left Greenwood about eleven or twelve o'clock and arrived in Atlanta after four. This testimony is relied on as evidence that the note could not have reached Atlanta in time for discount on March 12th, the day on which the books of the bank and the testimony of its officers indicated the discount had been made. It is true that banks usually transact their main current business with customers before four o'clock in the afternoon, but it is also true that the custom is by no means invariable, and that it is a general custom of banks at their discretion to accommodate their customers by transacting business with them after the ordinary banking hours. There is not a particle of evidence as to the banking hours of The Lowry National Bank. If the Court should take judicial notice of the usual banking hours, and attribute them to the plaintiff bank, it must also take notice of the custom of banks in departing from them whenever the circumstances seem to them to justify such a course.

Even if it be assumed, then, that the note did not reach Atlanta until after four o'clock on March 12, 1910, this fact is no foundation for an inference that the bank did not discount the note on that day. The force of the presumption from the possession of the note duly indorsed that the plaintiff was a *bona fide* indorsee for value, before maturity, and of the positive evidence of the officers of the bank that the note was so indorsed on 12th March, 1910, is not at all impaired by the evidence that the indorsement could not have been made until after four o'clock on that day.

For these reasons I think it perfectly clear that only one reasonable inference could be drawn from the evidence, and that the Circuit Judge was right in directing a verdict.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. JUSTICE HYDRICK *concurs.*

MR. JUSTICE WATTS *disqualified.*

MR. CHIEF JUSTICE GARY, *dissenting.* This is an action on a promissory note dated at Greenwood, S. C., 11th day of March, 1910 (but delivered next day), whereby the defendant promised to pay to the order of Southern Flour and Grain Company, on the 15th day of October thereafter, seven hundred and seventy dollars, for value received.

The plaintiff contends, that the said note was indorsed by the Southern Flour and Grain Company and came into its possession, in the usual course of business in the city of Atlanta, Ga., on the 12th day of March (the day on which it was delivered to the Southern Flour and Grain Company), and that they are now *bona fide* holders of the note.

The defendant claims that the plaintiff did not acquire the note before maturity, and that it, therefore, is not an innocent holder; that the consideration of the note was certain flour, purchased by the defendant from the Southern

Flour and Grain Company, under a contract in which said company guaranteed that the price of flour would not decline before a certain time, and represented that the flour purchased was of a certain quality, as to both of which—the guaranty and the representation—there was a breach.

At the close of the defendant's testimony his Honor, the presiding Judge, directed the jury to render a verdict in favor of the plaintiff, for the amount claimed, on the ground that only one inference could be drawn from the testimony, and that was that the plaintiff was an innocent purchaser, for value, before the maturity of the note, without notice. The only question in the case is, whether his Honor, the presiding Judge, erred in so ruling.

We reproduce the following testimony of E. Z. Seymour, the defendant, for the purpose of showing that there was some testimony tending to prove that the note was not indorsed by the Southern Flour and Grain Company until it was past due:

"Mr. Grier: Where was that note when you got that letter? (The letter was dated 8th October, 1910; was sent by the Southern Flour and Grain Company to the defendant, and was as follows: 'Your note for $770.00 will be due and payable Oct. 15th. Please give same prompt attention.') In the Bank of Greenwood. Did you or not examine that note in the bank? Yes, sir; I looked at it. Will you please state to me, whether or not, it had at that time, the indorsement there, of the Southern Flour and Grain Company, per R. O. Wallace, Secretary, on it? I can't be positive about this. I went to look at the note, and came back and told you at the time about the note, and you advised me not to pay it, that it certainly belonged to the Southern Flour and Grain Company.

"Mr. Giles: We object.

"Mr. Grier: You can't tell that. State whether or not. to the best of your recollection, it had been indorsed by the Southern Flour and Grain Company, and The Lowry

National Bank, at that time. To my best recollection, it belonged to the parties I bought the flour from.

"Mr. Giles: I object.

"Mr. Grier: You will have to answer the question. From your best recollection, did or not, the note, at the time you inspected it, have on it the indorsement of these people, the Southern Flour and Grain Company, to your best recollection? I don't think it had it on it at all, to the best of my recollection.

"Mr. Giles: We object.

"Mr. Grier: To your best recollection, will you please state to me, whether you saw this indorsement there, 'Purchased from Southern Flour and Grain Company on March 12, 1910, and now owned by us?' No, sir; I didn't see that—have no recollection of seeing it at all. You are pretty clear on that? Yes, sir; I am pretty clear on that— have no recollection of seeing that at all. And you examined the note? Yes, sir; Mr. Long let me see it. I asked him to let me see it, and he did so. Why did you want to look at it—to see whether it was negotiated, or turned over to somebody else, or not? Yes, sir. For what purpose? I wanted to make the men I bought this flour from sue me themselves—didn't want the note to go into third party's hands—and I went for that purpose, to see whether it was in third party's hand or not. Do you know whether or not the note remained in the bank, from the time you saw it until after it was due? Yes, sir; it did. It didn't go out of there? I don't think it went back until the 19th of October—I think that was when the bank sent it back. And you are pretty positive this thing down here (indicating) wasn't written on it? Pretty positive. Of course, I couldn't be sure, but I don't think it was there. You went there for the purpose of seeing, whether it had passed to the hands of a third party? Yes, sir. You can't tell what you said, but did you report what you saw to Messrs. Grier & Park, your attorneys?

"Mr. Giles: We object to that.

"The Court: What was that last question?

"Mr. Grier: I didn't ask him to state the conversation, but after he saw it, if he came to the office of his attorneys and stated to them, what he saw on the note—not to go into the statement.

"The Court: He can state he made a statement and stop at that.

"Witness: Yes, sir; I went to them and made a statement.

"Mr. Grier: And in consequence of what occurred there you refused to pay this note to The Lowry National Bank? Yes, sir.  Will you please state under what conditions this note was given, and for what it was given?

"Mr. Giles: We object to that.

"The Court: I think that is a proper question.

"Mr. Giles: We object upon the ground, that it is now owned and held, by an innocent purchaser for value, and without notice of any defects, or anything in the note, and that—

"The Court: That would be a very proper objection, and one that ought to be sustained, if it was all one way and they were innocent purchasers for value, but that has got to be one of the circumstances in this case now.

"Mr. Giles: We submit that this testimony is not competent, until they show that we are not innocent purchasers. There is no testimony at all, at this time, going to show or tending to show that the plaintiffs are not innocent purchasers, for value, without notice.

"The Court: There is a *scintilla* of testimony here to go to the jury on that at present, as to whether or not you did acquire these notes, at the time you allege in the complaint, or whether they got them later."

Again he testified as follows: "When was it you said you first saw that note in the bank?  I think it was the fifteenth, or may be later than the fifteenth.  That was the day it

was due? Yes, sir; after it was due. You went there to
see it? Yes, sir. And you are not certain what was on the
back of the note? No, sir; I am not certain what was on
the back of it. Was there anything on the back? To my
best recollection, there wasn't any red writing on the back
at all. According to your best recollection, there was not
red writing? Yes, sir; to my best recollection it was just
handed to the bank for collection. It might have been
there and you might not have noticed it? I don't know—
it might have been—yes, I suppose it could. Might have
been there? But I went for that purpose, to see whether it
was there or not, and my best recollection it wasn't, because
I came back and told Mr. Grier. If it hadn't been there,
wouldn't you have had a distinct recollection that it wasn't
there? My actions prove it wasn't there, because I went
right to Mr. Grier. But you have no independent recollec-
tion?. No, sir; I don't recollect for certain—I couldn't
swear positive to that. And you don't have any inde-
pendent recollection of what was on the back of the note?
Well, I don't suppose I do."

"A *bona fide* holder for value of negotiable paper is one
who has acquired title in the usual course of business, for
a valuable consideration, in good faith, from one capable of
transferring it, and without notice or knowledge of defenses
or circumstances, which should put him on inquiry." 7
Cyc. 924.

"Unless negotiable paper is payable to bearer, in which
case title will pass by delivery, indorsement is necessary to
constitute the holder of such paper a purchaser in the ordi-
nary course of business; and where he receives the paper
from the original payee, by assignment or sale, instead of
indorsement, he obtains no title superior to that of the
payee." 7 Cyc. 926.

"If a bill or note is originally payable to a person named
or his order, the legal title can be transferred only, in the
first instance, by indorsement." 4 Enc. of Law 252.

"Where an instrument, payable to order, is negotiated by delivery without indorsement, the holder acquires thereby the same rights only, as would pass to the assignee of a bill' or note not negotiable, or other chose in action; that is, he acquires only such title as the transferrer had, and takes the instrument subject to all the defenses and equities, to which it was subject in his hands." 4 Enc. of Law 253.

These authorities show, that if the Southern Flour and Grain Company did not indorse the note until it was past due, then it could not be said, that the plaintiff became the owner thereof in the usual course of business, and it would not be a *bona fide* holder.

It is true, the defendant does not testify positively that the note had not been indorsed by the Southern Flour and Grain Company before maturity, but he states facts from which the inference may reasonably be drawn, that the note had not been indorsed by the payee until it was past due.

Mr. Wigmore, in volume I, section 726, of his work on evidence, thus states the rule as to such testimony: "The general rule is, that recollection should adequately correspond to observation. It is in a qualitative way, that the deficiency usually occurs. The witness, it may happen, cannot recollect 'positively,'—'is not sure,'—'thinks' it was so,—has an 'impression,'—'believes,' or the like. How far is such a degree of recollection satisfactory?

"It is a commonplace of judicial experience, that testimony most glibly delivered, and most positively affirmed, is not always the most trustworthy. The honest witness, who will not exaggerate the strength of his recollection, is well worth listening to because of this very caution. Moreover, to accept such 'impressions' and 'beliefs' is, after all, not dangerous, since they carry, in themselves, a warning of their evidential weakness. The best judicial opinion does not insist on a high degree of positiveness in the recollection, but accept whatever the witness feels able to present."

There are several other facts and circumstances, upon which the appellant relies, to show that the plaintiff is not an innocent holder of the note; we do not, however, deem it necessary to consider them in detail, but only to call attention to the following statement of the rule in *Railroad* v. *Partlow,* 14 Rich. 237: "It may be, that no one of the facts would of itself warrant the inference, and yet, when taken together, they may produce belief, which is the object of all evidence."

In 1 Greenleaf Ev., sec. 51, it is said: "It is not necessary that the evidence should bear directly upon the issue. It is admissible, if it tends to prove the issue or constitutes a link in the chain of proof, although alone it might not justify a verdict in accordance with it. All the circumstances mentioned in this ground, may be regarded as links in the chain of proof, from which the jury might deduce the inference of the defendant's privity and direction in the acts of trespass. This is usually the case when an issue depends on circumstantial evidence."

I think the judgment should be reversed and the case remanded for a new trial.

MR. JUSTICE FRASER, *concurring with the* CHIEF JUSTICE. The question in this case was the date of the transfer to the plaintiff. If the defendant had said the indorsement was not on the note when it was due, there would have been no question that the case ought to have gone to the jury. Not that the date of the entry was material in itself. The date of the entry became material when the plaintiff's witnesses said that the entry was made on the day of the transfer. The plaintiff's witnesses were positive; the defendant hesitated. Such hesitation could arise from one of three causes: 1. A defective memory. 2. "A troublesome conscience." 3. A desire to escape punishment for perjury.

If the second cause operated, then the testimony was
entitled to very great weight. Which cause did operate?
I do not know. I have no power to know any more than
the Circuit Judge. It was the province of the jury to say,
and I think they ought to have been allowed to do so.

The statement on the back of the note is: "Purchased
from Southern Flour and Grain Company March 12, 1910,
and now owned by us." Was that an after thought or was
the bank preparing for trouble, or was it an entirely honest
entry? I think these were questions for the jury.

For these reasons I concur with the Chief Justice.